FILED

2016 Oct-18  PM 03:20
U.S. DISTRICT COURT
N.D. OF ALABAMA



**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **DAVID ADAM GREEN** | ) | |
| **PLAINTIFF,** *pro se* | ) | |
| | ) | |
| | ) | **Case No.** _____ |
| **v.** | ) | |
| | ) | CV-16-JHE-1697-S |
| | ) | |
| **WIPRO LIMITED** | ) | |
| **DEFENDANT** | ) | |

## INTRODUCTION

David Adam Green ("PLAINTIFF"), *pro se*, brings a complaint against Wipro Limited ("DEFENDANT") on the basis of biased and unfair employment practices, and wrongful termination. The PLAINTIFF contends the DEFENDANT terminated him without cause and without fulfilling standard employment practices currently enforced within the workplace.

## JURISDICTION

This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, which gives district courts jurisdiction over all civil actions arising under the Constitution, laws, and treaties of the United States.

This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, which gives district courts jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between the following, all of which are applicable in this matter:

- Citizens of different States
- Citizens of a State and citizens or subjects of a foreign state, except that the district courts shall not have original jurisdiction under this subsection of an action between citizens of a State and citizens or subjects of a foreign state who are lawfully admitted for permanent residence in the United States and are domiciled in the same State
- Citizens of different States and in which citizens or subjects of a foreign state are additional parties
- A foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or of different States

## VENUE

This Court and venue is proper in this judicial district under 28 U.S. Code § 1391
As Wipro Technologies operates in the State of Alabama, the district in which the
DEFENDANT is subject to personal jurisdiction.

## PARTIES

1. The PLAINTIFF is David Adam Green, a resident of 264 Strathaven Lane, Pelham, Alabama 35124 and former employee of the DEFENDANT.

2. The DEFENDANT is consulting services organization, conducting business in the State of Alabama and with a corporate office located at 2 Tower Center Boulevard, 22nd Floor, East Brunswick, New Jersey 08816.

## STATEMENTS OF FACT

3.      In May 2015, the PLAINTIFF was hired by the DEFENDANT as Practice Head, Digital
        Banking, career group D1.

4.      Upon being hired, the PLAINTIFF consistently communicated to his manager, Prakash
        Devulapalli, General Manager and Head, Banking Consulting, that organization needed
        to do more work around communicating my skillset and our capabilities to accounts and
        client partners, but little, if any, action was taken.

5.      Mr. Devulapalli was based at the DEFENDANT'S offices located in East Brunswick,
        New Jersey.

6.      In the PLAINTIFF'S role, he was to support the Citibank account, under the leadership of
        Vikram Chanda, Vertical Head, however, there was no support from the leadership
        within the Citibank account to leverage the Banking Consulting practice or the
        PLAINTIFF, instead using Wipro Digital, the digital business unit of Wipro, and an
        internal direct competitor of the PLAINTIFF'S role in the Banking Consulting practice.

7.      Mr. Chandna was based at the DEFENDANT'S offices located in East Brunswick, New
        Jersey.

8.      In August 2015, during a meeting in Bangalore, India with the Citibank leadership team,
        the PLAINTIFF learned that the DEFENDANT had a separate organization, Wipro
        Digital, which the DEFENDANT describes as "*the digital business unit of Wipro,
        collaborates and iterates with clients to deliver customer-centered digital transformation.
        Working at the intersection of strategy, design and technology, we derive insight, shape
        interaction, drive integration and unlock innovation for our clients. We apply Customer*

> *Journey Engineering to create extraordinary experiences for global brands, businesses and their customers at scale.*"

9.     In the first quarter of 2016, after repeatedly discussing the challenges of internal conflicts of interest between the PLAINTIFF'S role as the Practice Head, Digital Banking and the offerings from Wipro Digital, the PLAINTIFF requested permission from Mr. Devulapalli to seek available roles in Wipro Digital, however, that request was denied.

10.    In July 2016, the PLAINTIFF learned via an unintended email that his manager changed to Suvendu Chand, a newly hired Partner over Digital Banking and Channels, also reporting to Mr. Devulaplli.

11.    Mr. Chand was based in Bangalore, India.

12.    The PLAINTIFF states he was an unintended recipient because of the confidential nature of other matters in the email thread limited to Mr. Chand and Mr. Devulapalli

13.    The PLAINTIFF was added to the thread by Mr. Chand.

14.    At the time that the PLAINTIFF learned the status of his manager changed, he had no formal communication with his former manager, Mr. Devulapalli, and only had a discussion with Mr. Chand after requesting a meeting to discuss the changes.

15.    Despite bi-annual and annual appraisal periods sanctioned by the DEFENDANT, the DEFENDANT never disclosed the PLAINTIFF'S performance.

16.    In July and August 2016, the PLAINTIFF had several discussions with Mr. Chand, and despite the changes in management, no status change in his role was ever discussed or communicated.

17.    The PLAINTIFF operated under the assumption that he was still the Practice Head of Digital Banking and the purpose, requirements or expectations were changing.

18.   Mr. Chand and the PLAINTIFF had several discussions in August 2016 on finding a
      consulting role for the PLAINTIFF.

19.   Mr. Chand explained that work force management or project roles were handled
      exclusively by our workforce management group, specifically PLK (*full name unknown*),
      Bibhas Chatterjee and Bibhu Acharya and that the PLAINTIFF needed to wait on the
      workforce management group to provide him with a suitable project.

20.   PLK, Mr. Chatterjee and Mr. Archarya are based in India.

21.   The PLAINTIFF asked Mr. Chand for a list of projects available and open within the
      consulting team, under Mr. Devulapalli's leadership, but Mr. Chand stated such a list
      does not exist.

22.   The PLAINTIFF repeatedly asked for assistance in locating a project, as well as a list of
      open and available roles from PLK, Mr. Chatterjee and Mr. Acharya, with few requests
      acknowledged; a list of roles was never provided.

23.   On August 26, 2016, the PLAINTIFF received an email from Jeff Rupley, Assistant
      Manager in Human Resources, located in Franklin, Tennessee, stating that his
      employment would end on September 9, 2016, as a result of being unbillable for 36 days.

24.   Mr. Rupley directed to use *My Opportunities*, a tool on the DEFENDANT'S intranet
      providing recommended roles based on the employee's profile.

25.   This was the first instance during his employment, which began on May 2015, that the
      PLAINTIFF was told about My Opportunities.

26.   Upon logging into the tool, the PLAINTIFF discovered an account existed, but did the
      profile did not contain the necessary data in order for roles to be recommended.

27.    After spending several hours in the tool, the PLAINTIFF determined how complete the required profile inputs so that roles could accurately be recommended.

28.    The PLAINTIFF located a role for program management in commercial banking with a DEFENDANT'S client located in Mt. Laurel, New Jersey.

29.    The role description stated the start date in September 2016.

30.    The role description stated the end date in October 2016.

31.    The PLAINTIFF was not a perfect match, based on the algorithm used by the My Opportunities tool, however, the PLAINTIFF had previous experience with the client and felt he could fulfill the project needs.

32.    The PLAINTIFF emailed the account manager and program manager and expressed interest in the role.

33.    The PLAINTIFF interviewed with the program manager.

34.    The day after the interview, the PLAINTIFF received an email stating the role would last approximately 2 years, not the 6-8 weeks shown in the job description, and that the client nor the DEFENDANT would pay travel and expenses for non-local consultants, which was also not included in the role description.

35.    The DEFENDANT recommended I take the role immediately, even though it would require immediate relocation of the PLAINTIFF and his family from their home in Pelham, Alabama to Mt. Laurel, New Jersey.

36.    When it was clear this role was not going to work, the PLAINTIFF applied for more than a dozen roles and followed up with the role owners and account managers.

37.   Rarely did the PLAINTIFF receive a response to these requests, but in the occasions that he did, the role owners stated the roles were closed, even though they remain opened according to the tool.

38.   In the meantime, the PLAINTIFF sent a note to Mr. Rupley, requesting an extension of his termination date as a result of the circumstances described herein, but that request was denied.

39.   The PLAINTIFF then sent a note to Shalini Singh, Senior Manager, HR for BFSI, also requesting an extension of the termination date, and a 1-week extension was granted.

40.   The PLAINTIFF continued to look for roles on *My Opportunities*, communicating with Mr. Chand and Mr. Devulapalli for assistance, and communicating with Mr. Chatterjee and Mr. Acharya, but no assistance was offered, beyond Mr. Chand following up on a few email threads.

41.   On September 16, 2016, the PLAINTIFF'S employment with the DEFENDANT ended.

42.   Upon on September 16, 2016, the PLAINTIFF sent an email Inderpreet Sawhney, Chief Ombudsman for the DEFENDANT, along with Subhasish Biwas, Chief Ombudsperson for India, Europe & USA; Prasad Gantasai, VP, Head of HR for BFSI; Shalini Singh, Senior Manager, HR for BFSI; Supriya Mahajan, HR SPOC for BFSI; Abhijit Trivedi, Senior Manager, HR U.S.; Jeff Rupley, Asst. Manager, HR U.S. requesting three (3) months severance and a payment equivalent to three (3) months of COBRA coverage for the PLAINTIFF and his family (included in the Exhibit).

43.   The PLAINTIFF forwarded the above referenced email to Keri Halperin, Senior Corporate Counsel, Head of Employment Law – Americas, after he received a notification from LinkedIn that she viewed his profile.

44.   The PLAINTIFF believed that she viewed his profile because she had been alerted to the email he sent on September 16, 2016 and felt she would be an appropriate party and recipient.

45.   On September 20, 2016, the PLAINTIFF forwarded his email from September 16, 2016, to Ms. Sawhney and Ms. Halperin, asking for an acknowledgment that his email had been received and was being reviewed (included in the Exhibit).

46.   On that same date, shortly thereafter, Ms. Halperin responded that "received the letter and will evaluate the situation and provide a response in the coming days" (included in the Exhibit).

47.   On September 29, 2016, the PLAINTIFF emailed Ms. Halperin requesting an update on her progress (included in the Exhibit).

48.   On that date, shortly thereafter, Ms. Halperin responded (included in the Exhibit).

49.   In summary, Ms. Halperin concluded "*cannot justify to my stakeholders paying you three months' severance in light of the circumstances as I understand them.*"

50.   In response, the PLAINTIFF requested a copy of the billability policy (bench policy; or the policy that would describe the requirements for a consultant to find a project role) and she provided it.

51.   This was the first time such a policy was provided to the PLAINTIFF.


### CLAIMS

52.   The PLAINTIFF claims the DEFENDANT did not take the necessary actions in terminating the PLAINTIFF.

*Green v. Wipro Limited*

53. The PLAINTIFF claims he never received a bi-annual or annual review from the DEFENDANT, Mr. Devulapalli, Mr. Chand or Human Resources, nor was any feedback or criticism ever shared with him.

54. The PLAINTIFF claims he was never formally informed why his role was changed.

55. The PLAINTIFF claims there were no clear description of duties when his role changed.

   a. According to 2.2 of the DEFENDANT'S Employment Agreement, *the Employee will, to the best of the Employee's ability, perform the customary duties of the Employee's position and such other duties as are assigned to the Employee by the Management from time to time. The Employee will at all times perform such duties loyally and conscientiously*, however since duties were not properly communicated by Mr. Devulaplli, Mr. Chand nor anyone from Human Resources.

56. The PLAINTIFF claims that the DEFENDANT failed to provide adequate disclosure of his role change.

57. The PLAINTIFF claims the DEFENDANT never communicated, formally or otherwise, when his role change became effective.

58. The PLAINTIFF claims the DEFENDANT never communicated, formally or otherwise, the responsibilities of his new role.

59. The PLAINTIFF claims the DEFENDANT never formally communicated who the PLAINTIFF would be reporting to and the organization structure.

60. The PLAINTIFF claims that the DEFENDANT never communicated, formally or otherwise, any metrics by which the PLAINTIFF would be measured in his role change.

61. The PLAINTIFF claims that the DEFENDANT never communicated, formally or otherwise, any goals by which the PLAINTIFF should achieve in his role change.

62.    The PLAINTIFF claims that the DEFENDANT never communicated, formally or
       otherwise, the need to be billable for a certain number of days, hours or as a certain
       percentage of hours worked.

63.    The PLAINTIFF claims the DEFENDANT never provided bench policy was not
       disclosed or provided prior to the email from Keri Halperin on September 30, 2016

       a.    The circumstances nor policies of consulting practices by the DEFENDANT
             were ever discussed or disclosed, either by management or human resources,
             despite Ms. Halperin's claim that "*I am not aware of the intricacies of the TD
             Bank role, but what I do know is that Wipro has a relocation policy for which
             you would've been qualified if the role was indeed for an extended period of
             time. Unlike other companies for which I've worked (and with which you
             might be familiar), the vast majority of Wipro engagements are structured in
             such a way that the narrow margins don't allow for any sort of travel budget.
             In other words, while companies like Accenture employ a business model
             wherein consultants may work at a client site in another city during the week
             (where Accenture pays for all travel expenses, hotels, per diems, etc.), and
             then fly home on the weekends, there are almost no opportunities like that in
             Wipro. Wipro expects employees to move where the work is.*"

64.    The PLAINTIFF was initially directed by the DEFENDANT that roles would be
       provided by workforce management and that a list of open and available roles was
       unavailable.

65.    The PLAINTIFF claims the DEFENDANT'S workforce management team did not
       support the PLAINTIFF'S search for a role.

66. The PLAINTIFF claims the DEFENDANT was never directed him to any tools, including but not limited to *My Opportunities*, or training on tools, or methods or locating projects when his role changed.

67. The PLAINTIFF claims the DEFENDANT never provided instructions on how to create a profile and apply for available opportunities in *My Opportunities*, nor how opportunities would be automatically presented based on a profile match.

68. The PLAINTIFF claims the DEFENDANT never provided responses to roles he applied to and emails he sent to account managers and role owners despite repeated follow-up.

69. The PLAINTIFF claims that the DEFENDANT showed open and available roles when the PLAINTIFF applied, told the PLAINTIFF the role was no longer available, but still showed the role open open and available.

70. The PLAINTIFF claims that the DEFENDANT did not disclose proper rules and details of roles on *My Opportunities*.

    a. Example: see 20-25 above relating to length of role, requirements of role, travel and expenses of role, etc.

71. The PLAINTIFF claims there were no warnings, performance management plans, risks of being unbillable or any other communications from management or HR about the potential of his termination prior to the notice August 26, 2016.

72. The PLAINTIFF claims that the DEFENDANT did not follow its own termination procedures.

73. The PLAINTIFF claims that he was terminated as a result of favoritism and preference granted to less qualified individual(s) with closer relationships to management,

specifically Mr. Chand who was hired into the same role as the PLAINTIFF, but based in Bangalore, India and had a close, previous relationship with Mr. Devulapalli.

## REQUEST FOR RELIEF

Based on the *STATEMENTS OF FACTS* and *CLAIMS* herein, The PLAINTIFF moves this Court to grant his request for relief in the amount equal to 3 months' severance (a gross amount before taxes of $53,740.00), a payment in the amount equal to 3 months' of COBRA coverage (net amount of $1,224.41 per month for three (3) months to cover COBRA insurance, or total of $3,672.63) for failure to provide an environment that is professionally and ethically expected and owed to the PLAINTIFF as an employee, failing to be transparent and honest in its employment practices and challenges heaped upon the PLAINTIFF to compete with the DEFENDANT'S other line of business, Wipro Digital, failure to provide feedback in the form of annual and bi-annual reviews, failure to provide clear expectations of the PLAINTIFF'S new role.

The PLAINTIFF also moves this Court to grant relief of an additional $50,000.00 in damages that the PLAINTIFF claims for wrongful termination and the reputational harm of terminating his employment.

Finally, the PLAINTIFF asks this Court to grant any additional relief it feels is fair and just based on the facts of this case.

## CERTIFICATION

To the best of my knowledge, information and belief, formed after an inquiry that is reasonable under the circumstances, this disclosure is correct, except as noticed, as of the date set forth below.

DATED: ~~September 30, 2016~~
     OCTOBER 18, 2016

Submitted,

David Adam Green
Plaintiff, *pro se*
264 Strathaven Lane
Pelham, AL 35124
Email: adam@thisisadam.com
Mobile: 770-595-7256

## CERTIFICATE OF SERVICE

I, David Adam Green, as PLAINTIFF, certify that I have served a copy of the foregoing

document on the following party, as directed by the DEFENDANT, via email as a courtesy on

the 30th of September 2016 and by filing the same with the Clerk of Court this the ___ day of

October 2016.

Keri Halperin
Senior Corporate Counsel, Head of Employment Law – Americas
Wipro
2 Tower Center Blvd, Suite 2200
East Brunswick, NJ 08816
Email: keri.halperin@wipro.com
Phone: 847-736-9523

Submitted,

DAVID ADAM GREEN
Plaintiff, *pro se*
264 Strathaven Lane
Pelham, AL 35124
Email: adam@thisisadam.com
Mobile: 770-595-7256

*Green v. Wipro Limited*